IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL OTIS ROBERTSON,                                                                    PLAINTIFF
#106563

v.                                              4:21CV01077-BSM-JTK

ORLANDO NEWBURN, et al.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

**I.      Introduction**

Michael Otis Robertson ("Plaintiff") is incarcerated at the Pulaski County Detention Center (the "Detention Center"). Plaintiff sued Pulaski County Sheriff Eric S. Higgins, Lieutenant Orlando Newburn, Sergeant Joseph Austin, and Deputies Dedrick Rimmer and Jernezia Gibbs (collectively, "Defendants") in their official and personal capacities. Plaintiff brings claims of excessive force against Defendants Newburn, Austin, Rimmer and Gibbs, and corrective inaction claims against Defendant Higgins. (Doc. Nos. 2, 19).

Defendants have filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 67-69). Plaintiff has responded. (Doc. Nos. 72, 73, 75).

For the reasons set out below, the Court recommends Defendants' Motion be granted.

## II.     Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 2 at 1-2; Doc. No. 19 at 1-2). According to Plaintiff, on November 11, 2020, Defendants Austin, Newburn, Gibbs, and Rimmer entered Plaintiff's cell to move Plaintiff to a different cell. (Doc. No. 2 at 4). Plaintiff told Defendants Austin, Newburn, Gibbs, and Rimmer that he would not move to the other cell because the other cell's former inhabitant, who just left the cell, had Covid-19. (Id.). Plaintiff says Defendants Austin, Newburn, Gibbs, and Rimmer used unnecessary force against him in removing him from his cell. (Id.). Defendant Austin allegedly sprayed mace in his hand, and then wiped it in Plaintiff's eye. (Id. at 4-5). Defendants Gibbs and Rimmer "had [Plaintiff] by [his] neck pressing down real hard talking crazy to [him]." (Id. at 5). Plaintiff says the November 11, 2020 incident was the fourth time he "got jumped on [that] year" and claims Defendant Higgins failed to take corrective action against the wrongdoers. (Doc. No. 2 at 5-6; Doc. No. 19 at 4-5). Plaintiff seeks damages. (Doc. No. 2 at 7; Doc. No. 19 at 6).

## III.    Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

2

which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id. Summary judgement is appropriate only where no reasonable jury could find in favor of the nonmoving party. See Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994).

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

### IV. Discussion

Plaintiff alleges that Defendants Austin, Newburn, Gibbs, and Rimmer used excessive force against him, and that Defendant Higgins failed to take corrective action. (Doc. Nos. 2, 19). Defendants argue Plaintiff was not subjected to excessive force, Defendant Higgins did not fail to take corrective action, and that Defendants are entitled to qualified immunity. (Doc. No. 68).

A.     **Excessive Force**

Plaintiff identified himself as a pretrial detainee at the time of the incident.  (Doc. No. 2 at 3).  As such, Plaintiff's claims fall under the Fourteenth Amendment.  Andrews v. Neer, 253 F.3d 1052, 1060 (8th Cir. 2010).  In analyzing a pretrial detainee's excessive force claims, courts in the Eighth Circuit apply an objective reasonableness standard.  Kingsley v. Hendrickson, 576 U.S. 389, 402 (2015); Smith v. Conway County, Ark., 759 F.3d 853, 860 (8th Cir. 2014).  "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" under the circumstances.  Kingsley, 576 U.S. at 396–97.

> Factors relevant to assessing the objective reasonableness of force used by officers include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017) (internal citation omitted).

Courts "assess the actions of each officer 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" Id. "'[S]ummary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy.'"  Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (internal citation omitted).  For example, the limited application of a chemical spray may constitute a "tempered response by prison officials."  (Id.).  See also Ryan, 850 F.3d at 427-28 (officer's placing of body weight on resisting inmate and deployment of taser twice not excessive force in trying to remove Plaintiff from his cell) (collecting cases). Nonetheless, "[n]ot every instance of inmate resistance justifies the use of force." Treats v. Morgan, 308 F.3d 868, 872-73 (8th Cir. 2002).

Further, "it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force." Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011). "The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." (Id.).

***

The incident at issue in this case arose because Plaintiff did not want to be moved from cell 301 into cell 312. Defendants say Plaintiff needed to be moved because Plaintiff had damaged with and thrown feces through the trap of his cell door; Defendants provided photographs in support of their assertion. (Doc. No. 69 at ¶¶ 2, 4; Doc. No. 69-5 at 11-14). Plaintiff contests this allegation and maintains the officers wanted to move him because they were picking on him and trying to hurt him. (Doc. No. 73 at 2, 4). In any event, Plaintiff resisted the efforts of Defendants Austin, Newburn, Gibbs, and Rimmer to move him. Plaintiff has not contested that he resisted, but repeats that he did not want to catch Covid-19. (Doc. No. 72 at 2). In a nutshell, after Defendants Austin, Newburn, Gibbs, and Rimmer unsuccessfully maneuvered to get Plaintiff out of his cell, one burst of O.C. spray was used. Plaintiff then stood and was led to cell 312. Upon arriving in cell 312, Plaintiff jumped excitedly onto his bunk. Officers grabbed him to control him; Plaintiff then calmed down and sat on the bunk, and a nurse came to decontaminate Plaintiff.

Defendants argue none of the efforts of Defendants Austin, Newburn, Gibbs, and Rimmer constituted excessive force. In support of their Motion, Defendants submitted body camera footage from four officers—Deputy Caffey, Defendant Gibbs, Defendant Rimmer, and Defendant Austin—as well as the related incident reports, among other evidence. (Doc. No. 70; Doc. No. 69-5).

Plaintiff responded to Defendants' Motion, but Plaintiff did not file a separate statement of disputed facts in the manner the Court instructed. (Doc. No. 71 at 1). Rather, Plaintiff argues that Deputy Caffey was the only officer wearing a body camera and that other officers had turned their body cameras off. (Doc. No. 72 at 2). Defendants, however, supplied body camera footage from four officers. Plaintiff asserted that Defendant Austin "spring [sic] mace in his hand in wipe it in [Plaintiff's] eye." (Doc. No. 72 at 2). Plaintiff then said he was mistaken—that Defendant Austin sprayed mace in Defendant Newburn's hands and Defendant Newburn put his mace-covered finger in Plaintiff's eyes. (Doc. No. 75 at 1). Plaintiff maintains that Defendant Gibbs "had [Plaintiff] by [Plaintiff's] neck put too much pressure pressing down real hand talking crazy to [Plaintiff]." (Id.). Plaintiff maintains that Defendant Rimmer pressed down too hard on Plaintiffs leg. (Id.). Additionally, Plaintiff alleges that the actions of Defendants Austin, Newburn, Gibbs, and Rimmer were retaliatory—but Plaintiff included no allegations of retaliation in his Complaint, as amended. (Doc. No. 72 at 2; Doc. No. 73 at 3; Doc. No. 2; Doc. No. 19).

Plaintiff asserts that the information in the incident reports is false, and that the "video footage from the cell 301 camera capture[d] everything." (Doc. No. 73 at 4). The Court notes Plaintiff said he had not seen the video, but in a later response indicates that he watched the video. (Doc. No. 73 at 3; Doc. No. 75 at 1). According to Plaintiff, the video shows that Defendant Austin sprayed mace in Defendant Newburn's hands, and then Defendant Newburn put his finger with mace in Plaintiff's eyes, and twisted and broke Plaintiff's hand. (Doc. No. 75 at 1). Plaintiff says Defendant Rimmer twisted Plaintiff's wrist and hurt Plaintiff's broken hand. (Id. at 2). Plaintiff also asserts all Defendants were choking him, among other assertions. (Id. at 2-4).

As for the video, each of the four video clips captured the incident. (Doc. No. 70). Plaintiff was visibly upset about being moved to a different cell because the cell's former

inhabitant had Covid-19; Plaintiff was loudly protesting the upcoming move, yelling repeatedly that he was not going to catch Corona. (Id., Defendant Austin body camera footage at 22:39:19). With officers in his cell, Plaintiff went to the back of his cell; when the officers tried to take Plaintiff's arms to move him, Plaintiff put his arms behind him and sank to floor between the wall and one end of his bunk. (Id., Defendant Rimmer body cam footage at 22:39:54; Defendant Gibbs body camera footage at 22:39:45-22:39:48). Plaintiff did not make any attempt at violence against any officer, but he actively resisted the officers' attempts to move Plaintiff to the different cell; Plaintiff would not budge. (Id., Deputy Caffey body camera footage at 22:40:24, for example). The officers were trying to get Plaintiff to move, pulling and pushing Plaintiff, but Plaintiff was fully uncooperative. (Id., Deputy Caffey body camera footage at 22:40:24-22:42:08, for example). Eventually chemical spray was used, and Plaintiff can be heard complaining of the burn to his face and eyes. (Id., Defendant Gibbs body camera footage at 22:42:14). Plaintiff eventually stood up and was led out of cell 301 and into cell 312. (Doc. No. 70, Defendant Rimmer body camera footage at 22:42:42). Once in cell 312, Plaintiff, who was in a very excited state, jumped on top of his bunk. (Id., Defendant Austin body camera footage at 22:43:19). Officers can be heard telling Plaintiff to calm down; Defendant Rimmer has his hands flat on Plaintiff's back. (Id., Defendant Rimmer body camera footage at 22:43:28). Defendant Austin's hands are in the area of Plaintiff's head and neck, not visible by the camera; Plaintiff can be heard talking at this time, saying "he's choking me" and "mama." (Id., Defendant Rimmer body camera footage at 22:43:34; Defendant Austin body camera footage at 22:43:34). Some seconds later, Defendant Austin places one of his hands on Plaintiff's shoulder; Plaintiff eventually sits on his bunk. (Id., Defendant Rimmer body camera footage at 22:43:41; Defendant Austin body camera footage at 22:43:40). Within five minutes, medical staff arrives at the cell to decontaminate Plaintiff. (Id.,

7

Defendant Austin body camera footage at 22:48:30).  The incident reports submitted in support of Defendants' Motion generally are consistent with the video footage.  (Doc. No. 69-5).

To the extent material facts are in dispute, the Court may view the facts as depicted in the video.  Scott v. Harris, 550 U.S. 372, 378-79 (2007).  Defendants came to move Plaintiff to cell 312.  Plaintiff refused to move; he was recalcitrant, continuously resisting efforts to move him.  Plaintiff never appeared violent, but he behaved in an excited, emotional manner.  Defendants Austin, Newburn, Gibbs, and Rimmer also never appeared violent.  Defendants touched Plaintiff, trying to pull and push him, out of his cell, without result, before the burst of chemical spray was used.  No video footage depicts Defendant Austin spraying mace in Defendant Newburn's hands, as Plaintiff asserted.

After the incident, Plaintiff sought medical attention for pain in his back, neck and arm.  (Doc. No. 69-4).  The Court notes that Plaintiff complained to the medical provider that "his back was slammed against the door numerous times" by staff.  (Id. at 4).  The body camera footage provided does not reflect such treatment.  Medical staff had to examine Plaintiff from afar because officers would not open Plaintiff's cell door due to his disruptive/aggressive behavior.  (Id.).  Still, there provider observed no injury or bruising.  (Id.).  Plaintiff was prescribed methocarbamol and naproxen.  (Id. at 4).  From the medical records provided, it appears Plaintiff was not seen for any related complaints after November 16, 2020.  (Id. at 1-9).  The Court also notes that medical records from before the incident reflect that Plaintiff suffers from chronic right hand pain.  (Doc. No. 69-4 at 4).  Beyond Plaintiff's complaints of pain in his back, neck, and arm, there is no evidence of injury.  Plaintiff did not seek medical care for anything related to a finger being poked in his eye, and there is no evidence that Plaintiff suffered a broken hand during the incident.  Based on the records in evidence, any injury Plaintiff suffered was de minimis.

Considering all of the above, no reasonable jury could conclude the force used against Plaintiff was objectively unreasonable. As such, the Court recommends Defendants' motion be granted as to Plaintiff's excessive force claim.

### B.     Failure to Take Corrective Action

Plaintiff has not established how Defendant Higgins knew of the purported earlier instances when excessive force was used against Plaintiff, or how Defendant Higgins was deliberately indifferent to any risk to Plaintiff's safety. Plaintiff provided no evidence in support of his claim. As such, Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor on Plaintiff's corrective inaction claim. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).

### C.     Qualified Immunity

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]  "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

The Court found no violation of Plaintiff's constitutional rights in this case. Even if there was a violation, Plaintiff has not identified any clearly established right—and the Court otherwise

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

is not aware of any—that would preclude qualified immunity. As such, Defendants are entitled to qualified immunity.

### D. Official Capacity Claims

Plaintiff sued Defendants in their personal and official capacities. The Court recommends summary judgment be granted as to Plaintiff's personal capacity claims for the reasons set out above. As such, Plaintiff's official capacity claims should be dismissed with prejudice because there was no underlying constitutional violation. Wilson v. Spain, 209 F.3d 713, 717 (8th Cir. 2000).

### V. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 67) be GRANTED;

2. Plaintiff's Motion for Settlement (Doc. No. 74) be DENIED as moot; and

3. Judgment be entered in Defendants' favor.

Dated this 16th day of September, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE